IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LESLIE A. TABORAC,** | |
| **Plaintiff,** | **Case No. 2:11-CV-498** |
| v. | **Judge Peter C. Economus** |
| **NISOURCE, INC., et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court upon the Motion to Dismiss of Defendants NiSource, Inc., NiSource Corporate Services, Columbia Gas of Ohio, and Don Ayers. (Doc. # 4.) Plaintiff Leslie A. Taborac filed a memorandum in opposition[1] (doc. # 9), to which Defendants filed a reply (doc. # 10). Defendants' motion seeks dismissal of all of Plaintiff's claims. For the following reasons, this Court hereby **GRANTS** Defendants' motion.

**I.     FACTS[2]**

Plaintiff was a 31-year employee of Defendant Columbia Gas ("Columbia Gas"). (2d Am. Compl., doc. # 9-1, ¶¶ 2, 7.) Columbia Gas acted as an agent of Defendants NiSource, Inc. ("NiSource") and NiSource Corporate Services ("NCS"), and Defendant Don Ayers was Plaintiff's supervisor and manager at Columbia Gas. (*Id.* at ¶¶ 5, 6.) According to Plaintiff,

---

[1] Plaintiff's memorandum in opposition is captioned "Plaintiff's Opposition to Defendants [sic] Rule 12(b)(1) and (6) Motion with Motion to Amend the Am. Complaint." Attached to Plaintiff's brief is a proposed Second Amended Complaint. Plaintiff neglected to follow the Federal Rules of Civil Procedure, as she failed to seek leave of this Court to file an amended complaint. To avoid a further round of unnecessary briefing, this Court considers the Second Amended Complaint with regard to the RICO claim—the facts alleged in the Second Amended Complaint are effectively identical to those alleged in the Amended Complaint. There is no prejudice to Defendants, as Plaintiff's RICO claim fails under both the Amended Complaint and the Second Amended Complaint. The Court cites to the Second Amended Complaint throughout this Opinion and Order.

[2] The Court assumes the facts cited to be true for the purpose of determining Defendants' Motion to Dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendants NCS, Columbia Gas, and Ayers engaged "in continuing predicate acts" for the "purposes of shielding NiSource, Inc. and its subsidiaries from PUCO regulatory scrutiny[.]" (*Id.* at ¶ 64.) The alleged "predicate acts" stemmed from two incidents. First, "Defendants Columbia Gas of Ohio, NCS, and NiSource . . . combined to further the goals of the enterprise in shielding itself from PUCO regulatory scrutiny and sanctions" by entering into a "settlement agreement" regarding Plaintiff's claims of sexual harassment by a PUCO inspector. (*Id.* at ¶ 68.) Second, Defendants Columbia Gas, Ayers, NiSource, and NCS created "an express or tacit agreement to mislead PUCO investigators in a safety compliance audit of Columbia Gas of Ohio by falsely blaming Plaintiff for . . . safety regulatory non-compliance at . . . pipelines subject to PUCO audit." (*Id.* at ¶ 66.)

Columbia Gas terminated Plaintiff from her position at Columbia Gas, allegedly for falsifying inspection documents. (*Id.* at ¶ 28.) Plaintiff claims that the reasons provided for her termination were "pretext" for a discriminatory employment action, and she claims that Defendants "acquiesced" in the PUCO investigator's sexual harassment. As a result, she brings five state-law claims against all the defendants: Counts One, Two, and Four for actions allegedly in violation of Ohio Revised Code § 4112.02 *et seq.*; Count Three for intentional infliction of emotional distress; and Count Five for breach of a corporate anti-discrimination and harassment policy. (*Id.*, ¶¶ 41 – 63.) Plaintiff also claims that Defendants' conduct violated Ohio Revised Code § 2905.11(A)(5) (extortion), 18 U.S.C. § 1512(b) (witness tampering), and 18 U.S.C. § 1589(a)(3) (forced labor). Those violations, she claims, form the basis of Count Six, a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as codified in 18 U.S.C. § 1961 – 1968 (2006). (*Id.* at ¶¶ 64 – 74.)

## II. LAW AND DISCUSSION

### A. Jurisdiction

As a threshold matter, Defendants argue that this Court lacks subject matter jurisdiction because Plaintiff has "concoct[ed] a RICO claim that has no factual or legal basis." (Motion, page 3.) Defendants assert that Plaintiff's RICO claim is merely just a jurisdictional grab, and, in fact, "the gravamen of Plaintiff's complaint is the alleged wrongful termination of her employment with Columbia Gas." (*Id.* at page 8.)

Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when that claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Hamdi v. Napolitano*, 620 F.3d 615, 624 (6th Cir. 2010) (citing *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

Section 1331 of Title 28 of the United States Code grants federal district courts subject-matter jurisdiction over all claims "arising under" federal law. *Cobb v. Contract Transport,* 452 F.3d 543, 548 (6th Cir. 2006) (citing *Arbaugh v. Y& H Corp.*, 546 U.S. 500 (2006)). "A claim arises under federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal laws or the federal Constitution." *Id.* at 548 (citing *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (internal quotation marks and brackets omitted)); *see also Bell v. Hood*, 327 U.S. 678, 681 (1946) ("Before deciding there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and the laws of the United States. For to that extent, 'the party who brings a suit is master to decide what law he will rely upon, and . . . does determine whether he

will bring a suit 'arising under the [Constitution or laws] of the United States by his declaration or bill."). Although there are exceptions to the well-pleaded complaint rule, including, as noted by Defendants, where a plaintiff has made a claim "solely for the purpose of obtaining jurisdiction," *Cobb*, 452 F.3d at 548 – 49, this Court cannot say that Plaintiff's RICO claim was made "solely" for the purpose of obtaining jurisdiction. Further, "a plaintiff need not be entitled to relief under federal law in order for a district court to exercise subject matter jurisdiction." *Id.* at 549, citing *Bell v. Hood*, 327 U.S. at 685. To find that this Court lacks subject matter jurisdiction over Plaintiff's RICO claim would be to "erroneously conflate[ ] subject-matter jurisdiction with failure to state a claim upon which relief may be granted." *Id.* This Court certainly has subject-matter jurisdiction over RICO claims, and there is insufficient evidence in the pleadings to determine that Plaintiff's RICO claim was made "solely" for the purpose of obtaining jurisdiction. As a result, this Court finds that it has subject-matter jurisdiction. Thus, dismissal under Fed.R.Civ.P. 12(b)(1) would not be appropriate. However, for the reasons set forth below, this Court concludes that dismissal under Fed.R.Civ.P. 12(b)(6) *is* appropriate.

### B. Standard for Granting Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper. *Little v. UNUM Provident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted

unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer*, 4l6 U.S. at 236; *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004); *Mayer*, 988 F.2d at 638. The court will indulge all reasonable inferences that might be drawn from the pleading. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000); *Lewis*, 135 F.3d at 405.

### C. The Racketeering Influenced and Corrupt Organizations Act

Although RICO was passed as part of an initiative that specifically targeted organized crime and mob activity, *see United States v. Turkette*, 452 U.S. 576, 589 n.11 (1981), the Supreme Court has recognized that RICO reaches racketeering activity committed by legitimate businesses and organizations as well. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498-99 (1985) ("RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime. . . . [RICO can be] used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct."). Section 1964(c) creates a civil cause of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." Section 1962(c), which forms the basis for Plaintiffs' claim, provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

6

to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

1. PLAINTIFF'S RICO CLAIM

   *a. Plaintiff allegations of predicate acts  
   fall well short of any pleading standard*

To state a § 1962(c) RICO claim, a plaintiff must plead a person's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496; *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *see also Salinas v. U.S.*, 522 U.S. 52, 62 (1997). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) as any one of a numerous list of state and federal offenses. A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *Turkette*, 452 U.S. at 583. Title 18 U.S.C. § 1961(5) requires at least two racketeering acts or "predicate acts." Here, Plaintiff alleges that the Defendants violated RICO through the commission of three predicate acts: violation of Ohio Revised Code § 2905.11 (prohibition against extortion), 18 U.S.C. § 1512(b) (witness tampering), and 18 U.S.C. § 1589(a)(3) (forced labor). (Second Am. Compl., ¶ 69.)

   i. <u>Extortion</u>

Title 18 U.S.C. § 1962 prohibits enterprises from engaging in a pattern of "racketeering activity" under certain conditions. Section 1961(1)(A) provides in part that "racketeering activity" means " any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." Section 2905.11 of the Ohio Revised Code prohibits extortion in pertinent part as follows:

> (A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to an unlawful act, shall do any of the following . . .
>> (5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

According to Plaintiff, Defendants' first extortionate act occurred in 2003 when Defendants entered into a settlement agreement related to Plaintiff's claim of sexual harassment against a PUCO employee. Not only does Plaintiff fail to identify specifically the nature of the sexual harassment, the complicity of any Defendant, or the specific terms of the agreement, she does not identify any fact in support of her contention that this agreement "subjected her to ridicule and loss of professional reputation[.]" (Second Am. Compl., ¶ 67.) Although Plaintiff states that Defendants "conditioned" her employment on her entering into the settlement agreement, nowhere does she allege that any defendant "[e]xpose[d] or threaten[ed] to expose any matter tending to subject [Plaintiff] to hatred, contempt, or ridicule" or that any defendant damaged her "personal or business repute" or did anything specifically related to the act of extortion. Instead, Plaintiff alleges facts that are relevant only to her state contract or employment claims.

The second so-called extortionate act occurred when Defendants terminated Plaintiff's employment allegedly to curry favor with PUCO during an audit of pipeline inspections. (*Id.* at ¶ 66 – 67.) According to Plaintiff,

> . . . Defendant Ayers acting in the interest of furthering the goals of the enterprise combined with Defendant[s] NiSource[,] Inc. and Columbia Gas of Ohio and NCS in 2008 to engage in conduct as described above which included creating an express or tacit agreement to mislead PUCO investigators in a safety compliance audit of Columbia Gas of Ohio by falsely blaming the Plaintiff for Defendant Columbia Gas pipeline safety regulatory non-compliance at . . . pipelines subject to PUCO audit.

8

(*Id.* at 66.)  "Defendant obtained a 'valuable benefit' when it freed itself from regulatory sanction by falsely blaming the Plaintiff for a regulatory violation and betrayed her in the sexual harassment investigation to protect its standing with PUCO and evade regulatory sanctions." (Memo. in Opp., page 15, emphasis sic.)  These allegations of supposedly extortionate conduct lack any relation to that crime.  No threat of exposure is alleged (or any other element of extortion, for that matter).  Instead, Plaintiff accuses some or all of the defendants of dishonesty and betrayal without any citation to case law for the proposition that such conduct can form the basis for acts of extortion.  As a result, Plaintiff's claim of extortion as a predicate act falls flat.

ii.    <u>Witness tampering and forced labor</u>

Even thinner are Plaintiff's claims of federal crimes as predicate acts.  In her complaint, Plaintiff states that Defendants violated §§ 1512 and 1589 of Title 18 of the United States Code. (2d Am. Compl. at ¶ 69.)  Those sections prohibit witness tampering and forced labor, respectively.  However, nowhere does Plaintiff allege any facts in support of either predicate act. Section 1512(b) prohibits as follows (emphasis added):

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to –
>     (1) influence, delay, or prevent the testimony of any person in **an official proceeding**;
>     (2) cause or induce any person to -
>         (A) withhold testimony, or withhold a record, document, or other object, from **an official proceeding**;
>         (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in **an official proceeding**;
>         (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in **an official proceeding**; or

>                (D) be absent from **an official proceeding** to which
>                such person has been summoned by legal process;
>                or
>    (3) hinder, delay, or prevent the communication to a **law
>    enforcement officer or judge** of the United States of
>    information relating to the commission or possible
>    commission of a Federal offense or a violation of
>    conditions of probation; supervised release; parole, or
>    release pending judicial proceedings;
> shall be fined under this title or imprisoned not more than ten
> years, or both.

Plaintiff does not state that she was intimidated or threatened in any testimony in an "official proceeding," as required by the statute. Title 18 U.S.C. § 1515(a)(1) (1987) defines "official proceeding" for purposes of § 1512 as follows:

> (a) As used in sections 1512 and 1513 of this title and in this section—
>    (1) The term "official proceeding" means—
>        (A)   a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal Grand Jury;
>        (B)   a proceeding before the Congress; or
>        (C)   a proceeding before a Federal Government agency which is authorized by law[.]

Plaintiff claims that Defendants' "false representations about the Plaintiff in an official sexual harassment investigation involving PUCO and one of its officers" and their misrepresentation of Plaintiff's role in PUC's pipeline audit form the witness-tampering conduct prohibited by § 1512. (Mem. In Opp., page 16.) Plaintiff cites to no law in support of her claim that a company's employment investigation involving a private employee and a utility employee falls within the definition as stated in § 1515(a)(1) , *supra.*

Instead, Plaintiff cites to *Arthur Andersen v. United States*, 544 U.S. 696 (2005) which stands for the proposition that § 1512(b) requires proof of consciousness of wrongdoing and proof of a nexus between corrupt persuasion and the particular proceeding. This case is

particularly *un*helpful to Plaintiff, as she alleges no facts that indicate Defendants acted with a "consciousness of wrongdoing." Also missing in her complaint is any fact alleging a nexus between Defendants' acting with corrupt persuasion and the sexual harassment and pipeline corrosion "investigations."

Last, Plaintiff's claim under 18 U.S.C. § 1589(a)(3) which prohibits forced labor "by means of the abuse or threatened abuse of law or legal process" is devoid of any factual allegations in support of her claim. Unsurprisingly, her Memorandum in Opposition cites to no law that would permit this Court to find that Plaintiff stated a claim that Defendants acted in violation of this statute.

Because her contentions of predicate acts are without any factual allegations in support whatsoever, Plaintiff's Amended Complaint and Second Amended Complaint (were it properly before this Court) both fall well short of the pleading standard required by the Rules and RICO case law.

> b. *Plaintiff assertion of a "pattern of racketeering" is woefully deficient*

Naturally, as Plaintiff does not set forth the requisite predicate acts, she cannot establish the "pattern of racketeering" necessary to state a RICO claim. But even if she had pled the predicate acts, her complaint is deficient with regard to the pattern element.

The pattern element requires at least two predicate acts of racketeering activity within 10 years of each other. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237-38 (1989). "A pattern is not automatically established, however, by a large number of unrelated acts; the acts must be ordered and arranged so as to exhibit 'relatedness' and 'continuity.'" *Id.* at 133 (citing *H.J., Inc.,* 492 U.S. at 238).

"Continuity" refers to a "closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241. "Whether a pattern of racketeering activity satisfies the continuity requirement depends on the particular facts of each case." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006) (citing *H.J., Inc.*, 492 U.S. at 241). "[P]laintiffs can prevail if they demonstrate either a closed-ended conspiracy of sufficient duration or an open-ended conspiracy that could have continued into the future." *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991).

Closed-ended continuity requires a showing of predicate acts extending over a "substantial" period of time. "Although there are no rigid rules regarding what amounts to a substantial period of time, racketeering activity lasting only a few weeks or months and threatening no future criminal conduct is insufficient." *Moon*, 465 F.3d at 725 (citing *H.J., Inc.*, 492 U.S. at 242) (internal quotation marks omitted)). *See also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994) (predicate acts over 17 months did not satisfy the closed period analysis); *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992) (predicate acts over six or seven months not sufficient under closed-period analysis).

Of course, here, Plaintiff makes no showing of any pattern of racketeering. Plaintiff refers to only two events: a 2003 settlement agreements and her 2008 termination from the company. Those two events are separated by years, and they are unrelated to each other, as the former involves alleged sexual harassment by a non-employee and the latter involves alleged wrongful termination by her employer. "Relatedness" requires "the same or similar purposes, results, participants, victims, or methods of commission[.]" *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). Although Plaintiff claims that Defendants committed

both acts to curry favor with PUCO, she provides no factual allegations in support. In other words, Plaintiff fails to meet the *Iqbal/Twombly* standard that requires more than mere conclusory statements.

The continuity requirement can be established by showing that perpetrators committed several predicate acts within a shorter period of time or that perpetrators committed an act that "by its nature projects into the future with a threat of repetition." *H.J, Inc.,* 492 U.S. at 238. "[P]laintiffs can prevail if they demonstrate either a closed-ended conspiracy of sufficient duration or an open-ended conspiracy that could have continued into the future." *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991). Here, Plaintiff alleges neither closed-ended nor open-ended continuity: she merely presents two disparate acts separated by years, and she alleges no facts to support an inference that the conduct threatens repetition.

> c. *Plaintiff cannot meet the Sixth Circuit's "multi-factor test"*

In *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 and 494 U.S. 1027 (1990), the Sixth Circuit adopted a "multi-factor test" for determining whether a pattern exists in any given RICO case, a test that includes relevant factors such as the "number and variety of predicate acts" and the length of time spanning the acts. In *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995), the court re-affirmed the *Feltner* holding, noting that two Supreme Court decisions "buttressed the validity of the multi-factor approach to the determination of whether a pattern exists." *Id.* at 1110 (referencing *Sedima* and *H.J., Inc., supra*). The Sixth Circuit summed up the multi-factor test as follows:

> Therefore, to state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the

13

> better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the [fewer] the better).

*Id.* at 1110. In *Tatum*, the court found that where the complaint alleged a "significant period of activity" encompassing almost nine years, listing "dozens of examples of what [plaintiff] Columbia considers to be mail and wire fraud[,]" and alleging "various kinds of predicate acts" which provided the "foundation for various schemes" resulting in numerous and varied injuries, a sufficient pattern of racketeering was pled. *Id.* at 1110 – 11. That the number of victims was "limited" was "more than balanced by the strength presented in other areas." *Id.* at 1111.

Plaintiff's paltry allegations involving, at best, three predicate acts, one scheme (to gain favor with PUCO), perpetrated by an amorphous group of defendants, resulting in one injury to one plaintiff clearly does not pass the Sixth Circuit's multi-factor test. Unable to show relatedness and continuity, and unable to meet the multi-factor test, Plaintiff's does not plead the "pattern of racketeering activity" element of a RICO claim.

### d. *Plaintiff's complaint only superficially pleads association-in-fact*

Plaintiff's complaint is defective for yet another reason: she has wholly failed to plead association-in-fact. "A properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000) (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)) (internal quotation marks omitted). Here, the complaint lists a string of entities—Columbia Gas, NiSource, and NCS—allegedly comprising the enterprise along with Defendant Ayers, and then lists three supposed racketeering activities in which the enterprise purportedly engaged. "Although the plaintiff may allege the separate elements of 'enterprise' and 'pattern of racketeering' through the same facts, the complaint must

contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit." *Id.* citing *U.S. v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985) and *Frank*, 4 F.3d at 1386. Here, Plaintiff's complaint is devoid of any such factual allegations.

In sum, Plaintiff fails to plead any of the requisite elements of a RICO claim, and as a result, this Court finds that she fails to state a RICO claim. On this basis, the Court **GRANTS** Defendants' Motion to Dismiss with regard to Count Six.

2. PLAINTIFF'S CLAIM OF RICO CONSPIRACY

To the extent that Plaintiff attempts to state a claim of conspiracy under RICO, that claim also fails. To establish a violation of 18 U.S.C. § 1962(d), Plaintiffs must successfully allege all elements of a RICO violation, in addition to alleging "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983). Where, as here, the substantive RICO count fails to state a claim, the conspiracy claim fails, too, as to all Defendants. *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990).

**D.     Plaintiffs' State Claims**

Plaintiff has also alleged state law claims, including employment discrimination, intentional infliction of emotional distress, and breach of contract. However, since the Court will dismiss Plaintiff's federal claims, it declines to exercise jurisdiction over Plaintiff's supplemental state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if the federal claims supporting supplemental jurisdiction are dismissed prior to trial, the state claims should be dismissed as well); 28 U.S.C. § 1367(c); *Musson*

*Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . .").

## III. CONCLUSION

As a result of the foregoing, Defendants' Motion to Dismiss is **GRANTED.** Plaintiff's Amended Complaint (doc. # 3) is **DISMISSED as follows**: (1) Count Six of the Amended Complaint is **DISMISSED with prejudice** as to all Defendants—NiSource, Inc., NiSource Corporate Services, Columbia Gas of Ohio, and Don Ayers; (2) Counts One, Two, Three, Four, and Five of the Amended Complaint are **DISMISSED without prejudice**.

Accordingly, the Clerk shall enter judgment in favor of Defendants NiSource, Inc., NiSource Corporate Services, Columbia Gas of Ohio, and Don Ayers.

**IT IS SO ORDERED.**

October 21, 2011 /s/ Peter C. Economus
Judge Peter C. Economus
United States District Court